**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSHUA PAYNE,** | : | **CIVIL NO. 1:22-CV-559** |
| | : | |
| **Plaintiff,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **L. WHITE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

## I.   Factual Background

This case, which comes before us for consideration of a defense motion to dismiss filed by various correctional defendants, (Doc. 11), calls upon us to examine and consider the limits of civil liability for non-medical staff who are named as defendants in a case involving allegations of inadequate prison health care.

The plaintiff, Joshua Payne, is a state inmate housed at the State Correctional Institution (SCI) Mahanoy. The plaintiff's complaint, (Doc 1), is a sixteen page, 49-paragraph pleading which describes what Payne alleges has been negligent and deliberately indifferent medical treatment he received for a chronic condition experienced by the plaintiff, diabetes. (Id. ¶¶ 1-49). Thus, the gravamen of Payne's complaint is his claim of medical neglect and deliberate indifference lodged against individual and institutional health care providers.

While the clear focus of Payne's complaint is upon these health care providers, Payne has also named several supervisory, non-medical correctional officials as defendants in this lawsuit. These correctional supervisory defendants include Defendants White and Mason who are respectively identified as the deputy superintendent and superintendent at SCI Mahanoy.[1] Payne's complaint alleges that these correctional supervisors violated his rights under the Eighth Amendment by failing to intervene after he complained to them regarding the health care he was receiving.

Specifically, with respect to these non-medical correctional supervisors, Payne alleges as follows:

38. Plaintiff filed an inmate grievance against all named and yet to be named defendants but it was denied.

29. Plaintiff spoke to defendants Mason and White about SCI-Mahanoy's medical department and about the plaintiff [sic] on going issues with not receiving proper and adequate diabetic/medical treatment when they did their rounds on AB unit and plaintiff was told they will fix it. Plaintiff even showed both defendants his swollen feet and legs.

40. To date defendants Mason and White have not did nothing to fix or relived [sic] the plaintiff's medical conditions.

---

[1] Mr. Payne's complaint specifically identifies Defendant White as the deputy superintendent at SCI Mahanoy. (Doc. 1 ¶ 5). Defendant Mason is not identified in the body of the complaint, but we will take judicial notice of the fact that she is the superintendent at SCI Mahanoy. See Rosen v. Mason, 142 S. Ct. 149, 211 L. Ed. 2d 55 (2021)

(Id., ¶¶ 38-40).

On the basis of these averments, Payne seeks to hold these non-medical supervisory prison officials personally liable to him for alleged shortcomings, negligence and deliberate indifference by medical personnel in the course of his diabetic care. These correctional defendants have now moved to dismiss this Eighth Amendment claim, arguing that these allegations fail as a matter of law to state a claim upon which relief may be granted as to non-medical prison staff in this setting where an inmate is being treated by medical professionals. (Doc. 11). This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, we recommend that this motion to dismiss be granted.

## II.   Discussion

### A.   Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u>, at 555. "Factual allegations must be enough to raise a right

4

to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

[A]fter Iqbal, when presented with a motion to dismiss for failure to

5

state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their

6

veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

B.   **Guiding Eighth Amendment Principles**

Turning to Payne's Eighth Amendment medical deliberate indifference claims

against these supervisory non-medical correctional defendants, the plaintiff faces an

exacting burden in advancing an Eighth Amendment claim against the defendants.

To sustain such a claim, he must plead facts that:

> [M]eet two requirements: (1) "the deprivation alleged must be
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (quotations marks and
> citations omitted). In prison condition cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id. "Deliberate
> indifference" is a subjective standard under Farmer—the prison
> official-defendant must actually have known or been aware of the
> excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims

premised upon inadequate medical care. In the medical context, a constitutional

violation under the Eighth Amendment occurs only when state officials are

deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429

U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate

medical care in a prison setting, Payne is required to point to evidence that

demonstrates both (1) a serious medical need, and (2) acts or omissions by prison

officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d

192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves

the "unnecessary and wanton inflection of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or even negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997) (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278

(3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.'). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. See e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw, 967 F.Supp. 833.

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw, 967 F.Supp. at 836 (citations omitted).

10

Moreover, there is a necessary corollary to the guiding constitutional principles which control here, limiting the reach of the Eighth Amendment in a prison medical setting. In a case such as this, where the plaintiff's complaint reflects that an inmate received some level of on-going medical care, it is also well established that non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the Court of Appeals in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

## C.   Supervisory Civil Rights Liability: Guiding Legal Tenets

Furthermore, the non-medical correctional officials named as defendants by

11

Payne in this complaint are senior supervisory officials within the Department of Corrections, including the deputy superintendent and superintendent at SCI Mahanoy. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that prison supervisors may be exposed to liability only in certain, narrowly defined circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). In particular, with respect to prison supervisors, it is well-established that: "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423

F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207

(3d Cir. 1988)).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior.* . .
> . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); Robertson v.
> Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty,
> of the subagents or servants or other persons properly employed by or
> under him, in the discharge of his official duties"). Because vicarious
> liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead
> that each Government-official defendant, through the official's own
> individual actions, has violated the Constitution.

Iqbal, 556 U.S. at 676.

Applying these benchmarks, courts have frequently held that, in the absence

of  evidence of supervisory knowledge and approval of subordinates' actions, a

plaintiff may not maintain an action against supervisors based upon the misdeeds of

their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D.

Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa.

2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the*

*supervisor directed the actions of supervisees or actually knew of the actions and*

*acquiesced in them*." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006) (emphasis

added).

To the extent that an inmate's supervisory liability claims rest on the premise that prison supervisors did not after-the-fact act favorably upon past grievances, this claim also fails. An inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Inmates do not have a constitutional right to a prison grievance system. Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner")). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (holding that prison officials' failure to comply with grievance procedure is not actionable because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates); see also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern").

As the Third Circuit observed when disposing of a similar claim by another inmate:

14

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008). Indeed, as to such claims, the Court of Appeals has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011) (citing Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir. 1973)).

It is against these controlling legal benchmarks that we assess the legal sufficiency of Payne's claims against Defendants White and Mason.

### D.   The Motion to Dismiss Should Be Granted.

In our view, Payne's complaint fails to state a claim upon which relief may be granted with respect to Defendants White and Mason. As to these defendants, the complaint is clearly premised upon some form of supervisory liability, coupled with the non-medical defendants' alleged failure to intervene in his health care after-the-fact, since Payne does not allege that these defendants played any active role in his

15

day-to-day health care treatment decisions. Moreover, it is evident from the complaint that these supervisory officials possessed no medical background or expertise which would qualify them to second-guess the medical decisions being made by those who were directly responsible for Payne's care and treatment. Finally the well-pleaded facts in Payne's complaint simply indicate that at various times, these non-medical supervisory officials merely failed to respond to the plaintiff's various formal and informal complaints in a manner that Payne deemed satisfactory.

Given these facts, as pleaded by Payne in his complaint, his claims against supervisory defendants White and Mason fail as a matter of law for several reasons. First, the facts in Payne's complaint disclose that the plaintiff was being seen and treated by prison medical staff. As we have explained, it is well settled that these correctional supervisors cannot be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer, 991 F.2d at 69. Indeed, deferring to the medical judgments of treating medical staff is precisely what we expect of these non-medical prison supervisors. Spruill, 372 F.3d at 236.

Further, the allegations leveled against these defendants by Payne fall far short of what the law requires to establish supervisory liability: supervisory direction of illicit behavior or acquiescence in misconduct. Instead, as to Defendants White and Mason, Payne seems to premise their culpability upon their alleged failure to respond

affirmatively to his past complaints. However, these allegations fail to state a supervisory liability claim as a matter of law since "there is no apparent obligation for prison officials to investigate prison grievances." <u>Paluch</u>, 442 F. App'x at 695.

In sum, as presently drafted, the plaintiff's claims against Defendants White and Mason consist of little more than vague assertions of *respondeat superior* liability, coupled with dissatisfaction with the processing of this inmate's past grievances, assertions which, as a matter of law, do not suffice to state a supervisory liability constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case and this motion to dismiss, (Doc. 11), should be granted.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the correctional defendants' motion to dismiss (Doc. 11) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of December 2022.


                                          */s/ Martin C. Carlson*
                                          Martin C. Carlson
                                          United States Magistrate Judge